AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

08/28/2020

CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BY: _____ LM the _____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

8/28/20

CENTRAL DISTRICT OF CALIFORNIA
BY: _____DC_____ DEPUTY

In the Matter of the Search of                    )
                                                  )
Two digital devices seized from JONES on August 6,   )    Case No.   ED20MJ-00455
2020, and currently in the custody of Redlands Police )
Department in Redlands, California                )
                                                  )
                                                  )
                                                  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | See affidavit |
| 18 U.S.C. § 924(c | |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of_____days *(give exact ending date if more than 30 days*:_____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/ S /   Pursuant to Fed. R. Crim. P. 4.1

*Applicant's signature*

Joseph Nazareno, Special Agent (DEA)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 28, 2020

*Judge's signature*

City and state: Houston, Texas

Hon. Shashi Kewalramani, U.S. Magistrate Judge

*Printed name and title*

AUSA: John A. Balla (x6246)

## AFFIDAVIT

I, Joseph Nazareno, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1.     This affidavit is made in support of a criminal complaint and arrest warrant against Timothy Scott JONES for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession of 50 grams or More of Methamphetamine with Intent to Distribute) and 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime).

2.     This affidavit is also made in support of an application for a warrant to search two digital devices seized from JONES on August 6, 2020, and currently in the custody of Redlands Police Department in Redlands, California (collectively, the "SUBJECT DEVICES"), as described more fully in Attachment A.

3.     The requested search warrant seeks authorization to seize any data on the SUBJECT DEVICES that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute) and 843(b) (Use of a Communication Facility to Facilitate Drug Trafficking) and 18 U.S.C. §§ 922(g)(1) (Felon in Possession of a Firearm and Ammunition) and 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) (the "Subject Offenses").  Attachments A and B are incorporated herein by reference.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. <u>BACKGROUND OF AFFIANT</u>

5.    I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since January 2017.  I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and, as such, I am empowered by law to conduct investigations and make arrests for the offenses enumerated within the United States Code.

6.    I have attended the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, where I received training in federal laws and regulations.  I also completed the Department of Homeland Security ("DHS") Criminal Investigator Training Program at the FLETC. I regularly refer to these laws and regulations during the course of my duties, and have participated in investigations, and the execution of search and arrest warrants for violations of these statutes.

7.   Prior to working for the ATF, I was employed as a United States Probation & Pretrial Services Officer in the Eastern District of Wisconsin for two years. In that capacity, I supervised individuals alleged to have committed federal crimes, and those convicted of violating federal law, including offenses related to firearms, controlled substances, financial fraud, and sexually based crimes.  I also worked as a United States Probation Officer in the Western District of Tennessee for four years as a presentence investigator and as a supervision officer.  During this time, I also served as a certified Firearms Instructor, a Defensive Tactics Instructor, and a Search Enforcement Team member.

8.   I have received a Bachelor of Arts degree in Psychology from the University of Dallas and a Master of Arts degree in Forensic Psychology from the Chicago School of Professional Psychology.

9.   I am currently assigned to the ATF Riverside Field Office in Riverside, California, where I conduct proactive criminal investigations, participate in the execution of arrest and search warrants, conduct undercover operations, and cover other collateral duties.  I often work with the Riverside County Sheriff's Office ("RSO") Special Investigations Bureau ("SIB"), Major Crimes Unit ("MCU"), the Gang Task Force ("GTF"), and the Special Enforcement Team ("SET").

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

10.  On August 6, 2020, detectives from the Redlands Police Department ("RPD") contacted JONES, a felon on Post-Release

Community Supervision ("PRCS"), in the Country Inn & Suites motel parking lot in Redlands, California.  Officers sought to do a compliance search under JONES's PRCS search terms.  As they approached JONES walking to his car, JONES spontaneously put his hands in the air and said that the he had a gun and "dope" inside the bag he was carrying.  Officers searched the bag and JONES, and they found methamphetamine, cocaine, heroin, marijuana, and a loaded handgun inside the bag and $3,500 cash and the SUBJECT DEVICES in his pockets.

### IV.   <u>STATEMENT OF PROBABLE CAUSE</u>

**A.   PRCS Search and Arrest**

11.   I reviewed deputy reports and belt recordings from RPD, and I learned the following:

a.   On or about August 6, 2020, RPD detectives received a tip that JONES was staying at the Country Inn & Suites in Redlands.  The detectives knew that JONES was on PRCS with search times, and they went to the Country Inn & Suites to search JONES and ensure he was complying with his PRCS terms.  They had prior experience with JONES and knew that he frequently possessed firearms and drugs.

b.   While the RPD detectives surveilled the Country Inn & Suites, they saw JONES walk out the front of the motel.  They saw JONES walking with a black duffle bag in his left hand towards a BMW parked in the lot.  Once at the vehicle, JONES placed the bag on the roof of the car.

c.   As the detectives approached JONES, he placed his hands in the air and spontaneously said that he had a firearm

and "dope" in the duffle bag.  The detectives then handcuffed JONES and searched him and the bag.

      i.   Inside the bag, the detectives found:

      (I)  a SCCY Industries, model CPX-1, 9mm semiautomatic pistol, bearing serial number 087328 and loaded with three rounds of 9mm Winchester ammunition, two rounds of 9mm Federal ammunition, and two rounds of 9mm Remington ammunition, lying inside the duffle bag;

      (II) Two clear plastic bags with a crystalline substance inside a mesh pocket attached to the top flap of the bag (91 grams gross weight and 156 grams gross weight, for a total of about 247 grams gross weight);

      (III)    A clear bag containing a black tar-like substance inside the mesh pocket (2.82 grams total gross weight);

      (IV) A clear bag containing a green, leafy substance inside the mesh pocket (2.31 grams total gross weight); and

      (V)  A red bag containing a chalk-like substance, along with three bags inside containing similar chalk-like substances, all found lying inside the duffle bag (93 grams total gross weight).

      ii.  The detectives also found $3,500 cash in various denominations and two cell phones in JONES's pockets.

12.  Due to department policies, the detectives did not field-test the suspected drugs found inside JONES's bag.  Based on one of the detectives' training and experience regarding

controlled substances, he believed the crystalline substance to be methamphetamine, the black tar-like substance to be heroin, the green leafy substance to be marijuana, and the chalk-like substances to be cocaine.  I reviewed photographs of the substances, and, based on my training and experience, I agree. On August 13, 2020, I sent the substances to a DEA lab for analysis, and the results are pending.

13.  In my training and experience, given the amounts and varying types of the suspected controlled substances involved, the amount of cash found on JONES's person, the two cell phones found on JONES's person, and JONES's numerous prior drug-trafficking convictions detailed below, I believe that he possessed the controlled substances intending to distribute them.

**B.   Criminal History**

14.  On or about August 19, 2020, I reviewed certified conviction documents and learned that JONES had sustained the following felony convictions punishable by a term of imprisonment exceeding one year:

a.   On or about September 20, 2004, in case number FSB040214, in the Superior Court of the State of California, San Bernardino County, for a violation of California Penal Code ("CA-PC") Section 475(c), Forge Check;

b.   On or about May 21, 2007, in case number FSB056869, in the Superior Court of the State of California, San Bernardino County, for a violation of California Health and Safety Code ("CA-H&S") Section 11378, Possession of a Controlled

Substance for Sale;

        c.    On or about August 12, 2009, in case number RIF151799, in the Superior Court of the State of California, Riverside County, for a violation of CA-PC Section 496, Receiving Stolen Property;

        d.    On or about December 15, 2011, in case number FSB1102892, in the Superior Court of the State of California, San Bernardino County, for a violation of CA-H&S Section 11377, Possession of a Controlled Substance;

        e.    On or about April 11, 2017, in case number FSB1302059, in the Superior Court of the State of California, San Bernardino County, for a violation of CA-H&S Section 11378, Possession of a Controlled Substance for Sale;

        f.    On or about April 11, 2017, in case number FSB1305269-1, in the Superior Court of the State of California, San Bernardino County, for a violation of CA-H&S Section 11378, Possession of a Controlled Substance for Sale; and

        g.    On or about July 11, 2018, in case number FSB18002473, in the Superior Court of the State of California, San Bernardino County, for a violation of CA-H&S Section 11378 and CA-PC Section 664, Attempted Possession of a Controlled Substance for Sale.

    15.    From reviewing the records, I know that in more than one of these cases, JONES signed a plea agreement in which he initialed next to an advisement that he could not possess firearms or ammunition as a felon.  Further, in more than one of

these cases, he received a sentence greater than one year of imprisonment.

**C.   Interstate Nexus**

16.   On August 19, 2020, ATF Special Agent Monica Lozano, an agent who has special training in determining the origin of firearms and ammunition, conducted an interstate nexus determination on the firearm and ammunition seized from August 6, 2020 from JONES and determined that they were not manufactured in the State of California.

### IV. TRAINING AND EXPERIENCE ON DRUG OFFENSES

17.   Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a.   Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds.  Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

b.   Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs.  The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

c.    Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices.  This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.  In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

d.    Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices.  Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

e.    Drug traffickers often keep firearms for protection in connection with their drug trafficking activity.  Drug traffickers are often reluctant to rely on law enforcement when they are the victims of crime in the course of their drug trafficking because doing so would entail admitting to their own illegal activity, so they often rely on firearms to protect themselves.

      f.    Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

**V.  TRAINING AND EXPERIENCE ON FIREARMS OFFENSES**

18.  From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

      a.    Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

      b.    Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

      c.    Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and

from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

d.   Individuals engaged in the illegal purchase or sale of firearms and other contraband often use multiple digital devices.

## VI. <u>TRAINING AND EXPERIENCE ON DIGITAL DEVICES</u>

19.  As used herein, the term "digital device" includes the SUBJECT DEVICES.

20.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the

hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading

filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

e.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

f.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

g.    Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

21.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

## VII. <u>CONCLUSION</u>

22.  For all the reasons described above, there is probable cause to believe that JONES has committed violation 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession of 50 grams or More of Methamphetamine with Intent to Distribute) and 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime).

23.  Additionally, there is probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant, <u>ATF</u>
<u>Special Agent Joseph Nazareno</u>, in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this <u>28th </u> day of
<s>August</s>           , 2020.

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

<u>PROPERTY TO BE SEARCHED</u>

The following digital devices (the "SUBJECT DEVICES"), seized on August 6, 2020, and currently maintained in the custody of Redlands Police Department in Redlands, California:

1.   a black Samsung Galaxy Note 8 cellular phone bearing serial number A3LSMN95OU; and

2.   a black Samsung unknown model cellular phone bearing serial number RFCN20J8A5V.

**ATTACHMENT B**

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute) and 843(b) (Use of a Communication Facility to Facilitate Drug Trafficking) and 18 U.S.C. §§ 922(g)(1) (Felon in Possession of a Firearm and Ammunition) and 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) (the "Subject Offenses"), namely:

a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which concern the above-named violations;

c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written

communications sent to or received from any digital device and which concern the above-named violations;

d. Records, documents, programs, applications, materials, or conversations concerning the trafficking of drugs, including ledgers, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs, guns, or ammunition were bought, sold, or otherwise distributed;

e. Audio recordings, pictures, video recordings, or still captured images concerning the purchase, sale, transportation, or distribution of drugs, guns, or ammunition;

f. Contents of any calendar or date book;

g. Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations from February 21, 2020, to the present; and

h. Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

i. With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents,

browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

        ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        iii. evidence of the attachment of other devices;

        iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

        v.   evidence of the times the device was used;

        vi.  passwords, encryption keys, and other access devices that may be necessary to access the device;

        vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

        viii.    records of or information about Internet Protocol addresses used by the device;

        ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records,

4

documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

II. <u>SEARCH PROCEDURE FOR THE SUBJECT DEVICES</u>

3.    In searching the SUBJECT DEVICES (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.    The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device(s) beyond this 120-day period without obtaining an extension of time order from the Court.

d.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine

whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

   ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

   iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

   e.   The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

   f.   If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

   g.   If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

6

h.   If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.   The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.   After the completion of the search of the SUBJECT DEVICE(S), the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

4.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7